Good morning, Your Honor. My name is Michael Reese from Reese Richmond LLP. I am counsel on behalf of the appellant. At this time, I'd like to reserve five minutes for rebuttal. Okay. Do you have a clock in front of you? Yes, Your Honor. Okay. Just keep an eye on it and whatever you've got left over will be yours. Thank you, Your Honor. This appeal is from the lower court's order granting defendant's motion to dismiss and dismissing with prejudice the plaintiff's complaint against the defendant for violation of California and New York's consumer protection laws. This appeal seeks reversal of the lower court's decision with respect to the claims pertaining to the product known as the drumstick ice cream product. This case is about defendant allegedly substituting original ingredients in its children's ice cream product, which is popularly known as the drumstick, with a cheaper filler ingredient in order to cut costs and increase defendant's profits at the expense of its customer's health. This substitute ingredient is called partially hydrogenated oil, an oil which scientists have deemed to be highly harmful to humans, both children and adults alike. The claims of this action are based on defendant's misleading marketing of its ice cream product as being made from original ingredients and containing zero grams trans fat. Both of these representations are... What does original ingredients mean? I don't think anybody thinks that we're still using the ingredients from 1928, right? Well... The same oil that was there, or the same butter, or whatever it was ago, these are things, right? There actually are a great amount of consumers that believe that products based on original ingredients from either the 20s or the teens or even last century are, in fact, those ingredients. There's a whole market... You don't mean those ingredients. You mean ingredients like those, but made today. Nobody thinks it was a big vat of butter that's still being used now because it's 1928, right? That's correct. And, in fact, ice cream used to be made with just four or five ingredients. There's a whole movement on this. It's called the slow artisanal food movement. People look for this. They look to know that it's not from the original vat of butter, but it's still using the same ingredients such as butter and chocolate. But how do we know that those ingredients are any healthier than what's being used today? Well, that's actually... It's an interesting question because it doesn't necessarily matter for the purposes of this case. The purpose of this case is the defendant used misleading language. I thought I heard you open up to the consumer thought, and this false misleading claim is that the consumer thought they were getting healthy food because it referenced the original ingredients, and, in fact, they were not getting healthy food. They were getting partially hydrated oil. Well, that may be the consumer's motivation in purchasing this product. It's not one of the elements that you have to prove of the consumer protection statutes. All you have to prove is did the defendant make a statement that was deceptive or confusing? Did the plaintiff rely upon that? There's no question here that the plaintiff relied upon that. So it's a very simple question. By making these representations that its product was original, describing the product as the original sundae cone, describing it as the original vanilla, was it reasonable for consumers to assume, well, that means that the product is, in fact, from the ingredients that were from the original product. And, again, it's not from the original vat of butter, but it's made from butter as opposed to some artificial substitute. And the issue we have here is that we know that it's not from the original ingredients because it contains an ingredient called partially hydrogenated oil. It says zero grams of trans fat. That is correct. And there are two statements at issue here, and there's really two statements for Your Honor to consider. The first issue is with respect to the original statement, the language used by the defendant to describe its product, and it's important to underscore how important this language is. It's on the product, all over the product. It's stated no less than three times. The defendant's gone to the extent to actually trademark the product, to trademark the term original. Now the defendant claims in its papers, both before the lower court and before Your Honors, well, that term original has no meaning. Well, that's just not true. It used language that's confusing to consumers, that's deceptive to consumers. And there's a case directly on point, ruled on by the Ninth Circuit, that shows that the lower court erred in dismissing that particular claim. And that's the Williams v. Gerber's product case decided by this court in 2009. Your Honor, with respect to the zero gram trans fat issue, there's no question that that claim is sufficient as a matter of what the reasonable consumer interpreted. To what extent is your argument about the use of the term original or classic tied to this statement of zero grams of trans fat? They could be separate. I think it's the overall misleading packaging. Can you look at the entire packaging just as this court did? Wait a minute. Do you have a separate claim based upon the statement of zero grams of trans fat? Yes. And that's the statement? Yes. Is that yes? That is correct, Your Honor. And the issue before the lower court there and why the lower court dismissed that, the lower court said that zero gram trans fat claim is preempted. So it never did analysis. I'm sorry, but isn't that because the federal regulations at issue here require that when the product has less than 0.5 grams of fat per serving that the manufacturer must state that it's zero grams of fat? That is correct with respect to the nutrition fat panel, which is on the back of the box. There's no requirement that those statements be made on the front of the packaging or in other advertising, which is what the defendant did here. And what's important is- Then wouldn't it be more confusing to the consumer if they said two different things? Well, the defendant should not have made any representation regarding zero grams of trans fat on the front of the packaging. In fact, I decided- It's proper for them to do that, so long as they have the other warning. That is correct. See the nutrient content for whatever fat, the total content, the total fat. That is correct. And we cited in our complaint, we cited in our papers, that the FDA had issued a warning letter saying your product, your use of the- Did they issue that letter directly to Breyer's Ice Cream? Yes, Your Honor. Or did it go to the manufacturers of the products at large? No, the letter was sent directly to Breyer's Ice Cream in Oakland, California. That's correct. There were two letters, right? There were two. There was a press release and there was a specific letter sent to the defendant specifying this particular product as well as the Dibbs product. We're not contesting any claims regarding the Dibbs product. The court dismissed that on standing- What is it that you want the district court to do with respect to the statement? Or what relief are you seeking with respect to the statement of zero grams of trans fat that's on the front label of the box? It was. I mean, now we know that it's removed. We know that they're not doing that anymore. Sure. When the claim was brought, they were still doing it. We would primarily want some type of injunctive relief, just like the FDA achieved through its warning letter that was sent. So in other words- Well, that aspect really could be moved, right? Because it's not on the label anymore. It's not on the label anymore, but you could still get injunctive relief, which would prevent it from being placed on the label again. The point being, though, is that the standard is exactly the same. And this is where the court erred on the preemption issue with respect to the zero grams of trans fat. The court said zero grams of trans fat on the front of the label is an expressed nutrient claim. That's true. It makes a representation regarding the amount of trans fat product. The issue, though, is the court then stopped its analysis and said, well, because it's an expressed nutrient claim, it must be preempted. And that is not what the law requires. The law requires a fuller analysis. First, you have to determine whether or not it's an expressed nutrient claim. And then you have to determine, well, even though it's an expressed nutrient claim, is the law that the plaintiffs are suing under different than the FDA law? And, in fact, the court did not do that analysis whatsoever. The court had done that analysis and followed governing precedent, which is the in-way farm-raised salmon cases by the California Supreme Court in 2009, which follows recent Supreme Court decisions saying there's a strong presumption against preemption in situations like this, especially involving food, which the state has regulated over 150 years in the state of California. If the court had done that analysis, it would have found that the requirements are no different. In fact, 343 subsection A of the NLEA, that's 21 U.S.C., states you cannot label a product if the labeling would be misleading or false in any particular manner. And that's exactly what you have here. Now, the court certainly could have the opportunity to craft a remedy. And, in fact, the UCL is a claim that's tried before the judge. It's not a jury-based claim. But the court didn't even go that far. The court just said, because it's an expressed nutrient claim, therefore, per se, it's preempted. And that's just not correct. You have to do a fuller analysis to determine whether or not the claims would contradict what the FDA is trying to achieve. Let me get back to the claim about the original ingredients. I have a point. I'm not clear on that. How does a consumer know what the original ingredients are? I mean, it's funny you say, you know, you say, well, there's this other ingredient that the consumer doesn't expect. But I don't know what they put in ice cream in 1928. From our research, we do know that they did not put partially hydrogenated oil in their ice cream. But the question is not what they did or didn't put in. The question is, we see people on the slide and they say, oh, they're the same ingredients. But, you know, they would have to know what it is the same ingredients are. Not necessarily. In fact, the Gerber's case. Is this a new ingredient, newly invented? That is correct. It's a newly concocted ingredient invented in laboratories. It's often used as a preservative. It's been determined to be highly unhealthy. It's something that didn't exist in 1928 to be used in products such as the drumstick ice cream cone. It cannot be an original ingredient. A consumer would not be able to figure that out on his or her own. And that's just like in the Gerber case, where they made certain representations on the front of the packaging. Doesn't that sort of point to the fact that it's original instead of meaningless? What does the label actually say about that? It doesn't say original ingredients, right? It says original vanilla. It says original sundae cone, right? And it also says original vanilla. In fact, that's the name of the product that the plaintiff bought on two separate occasions, believing, in fact, contained original ingredients. It doesn't say original ingredients. It doesn't. It says original vanilla or original sundae cone. Sure. I mean, original sundae cone just sounds to me like somebody would say, well, we were the first ones to do a sundae cone. Which actually is not true either, because that was done in 1904. Well, that may not be true, but you're making a claim based on that. That is correct. But I think what's important to focus on is what is actionable under the consumer protection laws at issue here. The California Supreme Court in this court has also recognized that the claims don't have to be actually false. In fact, they can just be deceptive or confusing. And you certainly have that here, where they're using claims original, where your Honor says it seems like they're saying one thing. The plaintiff has said, well, I interpret it to mean original ingredients. Courts in other jurisdictions where they've seen that term original have said, well, that obviously means that it's the original formula we cite to the Kremers case, which pertains to Coca-Cola and which I think also memory may disservice that that was a-  Thank you, Your Honor. I would like to say the rest from above this time. Okay. Thank you. Good morning, Your Honors. Carmen Zarlinga from Mayo Brown for Dreyer's Grand Ice Cream Company. May it please the Court. In his several complaints in this case, the plaintiff appellant alleges that Dreyer's has advertised its drumstick dessert products as healthy, better than other frozen desserts. But in reality, none of these terms appear anywhere on the product label or in any other advertising cited in the complaint. To the contrary, the label pictures a sundae cone, tall and proud, and it is described in the advertising as a creamy and delicious frozen dairy dessert topped with a chocolatey coating and roasted peanuts on a crispy sugar cone with a chocolatey lining and, my favorite, a chocolatey surprise. A reasonable consumer would not think this would be a healthy, tasty dessert. I don't see how. And so I ask rhetorically, I ask rhetorically, do words mean precisely what the plaintiff's counsel say they mean, nothing more and nothing less? Good students of literature will recognize the reference to Wonderland, but those are not the rules that govern here. The chasm between plaintiff's allegations and an actual claim is too wide and too deep to be bridged by existing legal doctrine. And so the district court was correct to dismiss this case. Well, it was a trans-fact. It got you into some trouble with the FDA, right? It didn't. It didn't. It earned us a letter from the FDA, which is a warning letter, and many other people... A warning doesn't usually mean a good thing. Well, a warning means the letter is not... If you're driving along the highway, speeding, and the officer says, I'm giving you a warning this time... That is a good thing. But it's not as good as having to stay within the speed limit, right? Probably not. But to be clear, the warning letter is not a determination under the law of the circuit, under the biotic case that we cited in our brief. There was no adversarial proceeding. Nothing occurred. A letter was sent by a lower-level administrator that we think is incorrect. And then what happened? Absolutely nothing. Absolutely nothing happened. But you removed the zero-gram trans-fact, correct? It was gone before the letter was sent, ironically. So, you know... You've added trans-fact to it now? Excuse me? You've added more trans-fact to the letter? No, we just took it off, because, you know, companies change their labels all the time. Do you understand the complaint to be asserting a separate claim under... Regarding the zero trans-fact notation, asserting a separate claim under 21 CFR 101.13H? I do not understand that, Your Honor, because it definitely does not. The complaint jumbles together all of the allegations, and then what is followed by that is several different claims, one under the unfair competition law, one under the California unfair advertising law, and a couple other claims, the New York business law. So the claims are not specific. The claims are based on the entire, you know, we'll call it potpourri of allegations. And I want to hit on a couple things that relates to that that we heard from counsel for the appellant. Nowhere on the package does it say original ingredients. Okay? So that's not something that's on there. Partially hydrogenated oil... Well, it says the original sundae cone, and it says original vanilla, right? That's right. And in their... What does original do in modifying vanilla? I don't think it does anything. It's like the original farmer's market at 3rd and Fairfax in L.A. It was started in 1934. What does that mean? It could mean a lot of different things, but it certainly doesn't mean that the farmers that were there in 1934 are still the suppliers of that operation. So it could mean many things to many people. It just says the original. But shouldn't we... I couldn't have... William's speaker, okay? Shouldn't this be... It shouldn't have been dismissed as a matter of law. It probably should have gone back for the... Try it back and determine how a reasonable consumer would, in fact, view those claims on the package. We don't agree with that, Your Honor, and let me tell you why. Williams v. Gerber does not say that there is an immunity to a 12b-6 motion in a false advertisement case because a plaintiff says it's false and misleading. Otherwise, you could make crazy allegations that are out there in the California courts today that Fruit Loops contains fruit and, therefore, it's false advertising. There's a case like that, a case that was dismissed, and we think properly so. So Williams v. Gerber is not controlling here. It does not address preemption anyway. But you're arguing the facts. We're sitting here arguing about what a reasonable person would construe original to modify or what the original sundae pie means. Aren't those questions a fact? Well, what I would do is read to you a short excerpt from a more recent case. So Gerber relied on the learner... But I'm not telling you that Gerber isn't still controlling precedent in the Ninth Circuit. It is definitely controlling precedent, but I don't think it applies here, and here's why. Gerber relied on a case called Linear Technology Court, a California appellate case. Since that time, the California appellate court has issued the decision in Hill v. Roll International, which we cite in our brief, May 26th of last year. And it says, and I quote, and this is the California State Court talking about its own law, our division has stated in resolving an appeal based on the reasonable consumer standard following a bench trial that the standard to be used in evaluating whether an advertisement is deceptive under the UCL is purely a question of law. Other courts have stated that whether a business practice is fraudulent, deceptive, or unfair is generally a question of fact, requiring the consideration and weighing of evidence, and usually cannot be decided on demur. This is not an irreconcilable conflict. Generally and usually do not mean invariably, and a demur must be sustained when the assumed facts show the lack of a valid claim. Significantly in this case, it is very similar to the case before you in the following respect. On a water bottle, there was a green drop. The plaintiff alleged that the presence of the green drop signified that it was a superior product, same allegation we have here, and it had all sorts of other implications flowing from that green drop. And the court, the state court, construing its own law, said, that is not a viable claim in this court, and we can throw it out on a demur. I'm sorry, I lost the chain of reasoning of how that relates to Gerber. How it relates to Gerber is that... That was not the case that Gerber relied on, right? It was not a case that Gerber relied on. It's come out after Gerber, and it says that you can dismiss a California unfair competition claim on a demur. And that's from the Court of Appeal? It's from the Court of Appeal in California. It could have been saying you couldn't do it. I think there was some engagement with Gerber, too. Gerber didn't say you couldn't. It said, on the facts of this case, when everybody's arguing about what a reasonable consumer would perceive, this one has to have some more factual development. That's what it said, and I don't want to overstate. What I'm saying is the California state courts, since Gerber... They said almost the same thing, that sometimes it's appropriate when it's not even plausible that a reasonable consumer could believe a particular statement and a particular thing. But other times, you have to take it to trial, and you have to draw that line. Right, and respectfully, I believe that this case is on the side of the line that warrants dismissal, and that is what the district court thought as well. And that is what the court in Hill v. Royal International thought. So courts are dismissing these claims, including California state courts. In the wake of Gerber. Let's say it said... The label said original ingredients. Would that be dismissable as well? I think it would be a tougher case because it would be more like the Kremer case. Oh, really? I think I asked a few questions about the Kremer case. Thank you. That was such a... Yes, well... I'm thankful that we're not there. I think it would be more like the Kremer case, which is a district court case, but where the product was original Coca-Cola formula, and that formula wasn't here. There was no cocaine. Really? Yes, so I think it's a tough case, but it brings me back. That comment brings me back to... And the answer is, being a tougher case, you said that twice. The answer is... If it said original ingredients, would that be dismissable? I think it might be. It depends. I think that there are several cases that say... Everything else stays the same, except that change in one fact. So... In this case, certainly all of the trans fat allegations would still be out. They're preempted. So that would stay the same. As to whether the plausibility is enhanced by that, I don't know. I don't know the answer to that. I'd have to think about it more. But I think it's a tougher case, is the most I could say. Well, assume that that would be actionable. Why couldn't a reasonable consumer read the original vanilla or original sundae cone as suggesting that it had the original ingredients, and not all these newfangled late 20th century ingredients made in a laboratory? It's all made with wholesome... Well, what used to think were wholesome things. We bought that available. Woody Allen in the future thinks it's wholesome. It takes us back to one of the questions earlier in the day, which is, what is the reference point? That's not alleged anywhere that consumers know what was in products in 1928, or 1934, or 1960 for that matter. There's sort of a hazy vision that things were better. It was before the Depression. It was 1928, not 1929. Things were nice. Perhaps they have the better vision, but I think Judge Wardlaw made the point that probably they weren't better. Food is much safer today. Many orders of magnitude safer today than it was then. In some ways, I so long for that trans fat. I don't have enough trans fat. The statement that there's no grams of trans fat, doesn't that suggest there's no fat? I don't think it does. Why not? Does a reasonable consumer know what trans fat is? I think the reasonable consumer knows the difference between no trans fat and no fat, because there's an extra word in there. I think the reasonable consumer knows to turn the package on the side, look at the nutrition facts label, which is required by law in every single package, and it's broken down. This particular product contained more than 19 grams of total fat and 10 grams of saturated fat? I think it was 15. More? Yes. When you use the statement, zero grams of trans fat, aren't you required to have that additional admonition about C, the nutrient box for total fat content? In truth and in fact, there was confusing guidance from the FDA on that. Certainly the argument can be made that that should have been on there. What was misleading about CFR 101, 13, each one? Well, we don't think anything was misleading, Your Honor. There was nothing misleading. Wasn't that required, though? I think arguably it was required, and the reason it wasn't on there was because there was confusing guidance from the FDA. Why doesn't he at least state a claim with respect to that part of his argument? Because he never stated a claim. Because you possibly can state such a claim in California, and what you have to allege to get around preemption is that there is an identical state law... Well, doesn't California law incorporate all of the requirements of the federal FDA and the regulations? It does, and you can make a claim under the Sherman law. The Sherman law is the law you're referring to, which plaintiff never made, despite the fact that he had three tries to do it. In your complaint, you don't have to specifically allege the name of every statute. Well, if you are going to invoke a Sherman law claim under the farm-raised salmon case, which plaintiff's counsel is familiar with, it's certainly a good idea to put in there how you're doing it, what the road is to get around preemption, and the road is there's an identical state law, and that's all I'm suing on. And if that were all this plaintiff was suing on, the complaint would look one heck of a lot different, because it would have no relationship to trans fat. All it would say is that I thought this was a low-fat product. And if that is really what the complaint said, it still should have been dismissed, because it's not reasonable to think that when you look at the packaging as a whole. But he raises the argument in the motion to dismiss. He raised the argument in the motion to dismiss. The response to your motion to dismiss? He did raise the argument. But the district court didn't address it head-on. He never asked for leave to plead the claim. I don't think the claim, in fairness, your honor, the district court is supposed to have a real pleading, and be able to evaluate it. He gave the plaintiff three chances that it wasn't put in there in that manner in a clear way. As you pointed out, you even asked, does the complaint separately allege it? It doesn't separately allege it. It's all mishmash. Is the claim for injunction moot, given that the label no longer shows? It's definitely moot. It's now three, over three years since it's been removed. We're not putting it back on there. We're not going to put it back on there. Is Eric so committed? Well, this is being recorded, and you will be held to it. No, no, no, I'm quite serious. This will be called a judicial estoppel, so are you representing that your client will not put it back on the label? That is correct, your honor. And I thank your honors for your time. Thank you. Thank you, your honor. I just want to address a couple of high points in response to my counsel representing the defendant. With respect to the original terminology, it's interesting what the defense counsel stated. He said the original can mean many things to many different people. Well, that's exactly right. And that's why the defense interpretation of that term, which of course they're going to downplay, the meaning of it to a consumer, as well as the judge's interpretation, is wrong to rule as a matter of law that that interpretation is the only interpretation. Gerber case is directly, absolutely on point. The facts of it are strikingly similar to this particular situation. It is governing authority. Here's my problem with your position. I'll give you a chance to just respond to it. After looking at this whole case, I thought, it's ice cream, it's chocolate, it's nuts, it's sugar. How can anybody reasonably think that this is healthy in this day and age? And even without any understanding of what's a trans fat, what's a saturated fat, and anything about particular fats, how is this healthy? Well, there's two responses to that. One is whether or not it's in fact healthy is kind of irrelevant. But no, but your argument that the original is somehow better for the consumer, it's based on whether it's healthy for the consumer, really. Well, that may be one reason that the consumer was motivated to go after a product advertised as having original ingredients. Another consumer may have another motivation, but the motivation itself is not one of the elements you have to prove. All you have to show is did the defendant use a statement that was deceptive or confusing. Great, then imply that the product is a better choice than the products without the claim. Better in what way? I mean, obviously better in terms of not being harmful to their health in this case. That is in fact why this particular plaintiff bought it, but it doesn't necessarily you don't have to prove that to show that the claim itself is deceptive. In fact, as the Gerber case suggests, a plaintiff in this type of situation should be allowed to develop more evidence, either through marketing surveys or consumer surveys. We have not been allowed to do that. This is actually just at the motion to dismiss stage, which just like Gerber was. As Gerber also pointed out, it's not difficult to choose statements, designs, and devices which will not deceive. This claim is obviously confusing consumers. If it's open to many different interpretations, it's obviously deceptive or can be at least developed to be deceptive before a prior fact. It should not be dismissed on a motion to dismiss. And also, Your Honor, with respect to the how can health ice cream be healthy, believe it or not, I believe it's a $3 billion industry out there regarding healthy ice cream. The defendant makes a product called Skinny Cow, which is an ice cream. Does it sound like it would taste very good? I will admit I have not tasted it, but it has no trans fat. It doesn't have any partially hydrogenated oil. You wouldn't try to taste it twice. I wouldn't try to taste it twice? You wouldn't do it twice. You wouldn't. Probably not. I saw it at Costco. I ordered some at once. It sounds like we're taking judicial notice of that. Let me ask you about malignancy. What is your answer to opposing counsel's argument that they claim a fine injunction based on their trans fat is not moved because they don't have a label and don't plan to put it back or will not put it back? It doesn't have the force of law, so it's not moved. That's not the force of law. If we rule that if we base our ruling on that representation, then it doesn't have the force of law. It's called judicial estoppel. They're bound by it. They can't go back. If they ever do, we can take them to court and get a tenancy. While the injunctive relief aspect might, in fact, be moved if they are, in fact, judicially stopped by counsel's representation here, there are other remedies to be sought as well. For the past use of that? We're now talking only about the 0% That's correct. And so I got your answer on injunctive relief. So you're saying even if that's moved, there are other remedies. What would be the other remedies? There's restitution, which is one that claims under the UCL as well as the CLRA. So that would be a monetary relief. I see. In addition to the injunctive relief. Okay. Thank you.
judges: Kozinski, Wardlaw, Paez